Argued March 16, affirmed April 5, rehearing denied May 10, 1927.

## BRUNO SANTORO v. J. W. BROOKS.

(254 Pac. 1019.)

**Appeal and Error—In Passing on Rulings Denying Nonsuit and Directed Verdict, the Supreme Court must Look on Evidence in Light Most Favorable to Plaintiff.**

1. In passing on trial court's rulings denying motions for nonsuit and a directed verdict, the Supreme Court must look upon the evidence in light most favorable to plaintiff.

**Highways—Automobile Driver Held not Contributorily Negligent, as Matter of Law, in not Anticipating Defendant Would Drive Directly Across Course of Travel.**

2. In action for personal injuries in automobile collision between truck driven by plaintiff's son and defendant's automobile, evidence

*held* not to show plaintiff contributorily negligent, as a matter of law, in not having reasonably anticipated that defendant, after driving up to the pavement, would continue to drive almost directly across course of travel of plaintiff's truck.

**Negligence—Contributory Negligence is Question of Fact.**

3. Ordinarily, contributory negligence is a question of fact for the jury.

**Highways—Driver of Plaintiff's Automobile Held not, as Matter of Law, Negligent in Colliding With Car Driven Across Course of Travel.**

4. In action for personal injuries to plaintiff's children from collision of his automobile truck driven by his son and defendant's automobile, evidence *held* not, as a matter of law, to show that plaintiff's son was negligent in failing to exercise due care to avoid collision by turning to right or left after seeing defendant's automobile drive directly across his course of travel.

**Negligence—Failure to Obey Statute is "Negligence."**

5. Where statute requiring the performance of an act controls, failure to do that which it commands to be done, or doing of that which is forbidden, constitutes "negligence."

**Highways—Intersection of Highways With Unused Dedicated Street Held not "Intersection," Within Twelve-mile Speed Limit (Laws 1921, p. 710, § 1, Subd. 29).**

6. In action for personal injuries in collision between plaintiff's automobile truck and defendant's automobile, intersection of highway with unused dedicated street at place of collision *held* not a street "intersection," within Laws of 1921, page 710, Section 1, subdivision 29, making it negligence *per se* for plaintiff's son to drive thereon in excess of twelve miles per hour.

**Appeal and Error—Error in Court's Comment That There was No Question of Contributory Negligence in Case Held Cured by Instructions as to Defense Thereof.**

7. In action for personal injuries from automobile collision, error in court's comment that he did not think there was any question of contributory negligence in case was cured by instructions as to defense of contributory negligence.

---

Appeal and Error, 4 C. J., p. 955, n. 35.

Highways, 29 C. J., p. 650, n. 97, p. 655, n. 4, p. 656, n. 14, 15, p. 668, n. 13.

Negligence, 29 Cyc., p. 427, n. 73, p. 436, n. 50, p. 512, n. 85, p. 640, n. 13.

## From Washington: GEORGE R. BAGLEY, Judge.

---

3. See 20 R. C. L. 166.
5. See 20 R. C. L. 39.

Department 2.

This is an action to recover damages resulting from an automobile collision alleged to have been caused by the negligence of the defendant. About 5 o'clock in the evening of a clear day, October 19, 1923, Ruffie Santoro, son of the plaintiff, was driving a Ford auto-truck on the Tualatin Valley highway in a westerly direction toward the City of Hillsboro. In the car with the boy driver, who was eighteen years of age, were his two little sisters and his younger brother. As the automobile, which was being driven on the right-hand side of the paved highway, approached the village of Reedville and was about 340 feet from point of collision, it is alleged the defendant, whose automobile had previously stood upon the platform in front of a warehouse near to and on the south side of the highway and almost directly south of where the accident occurred, carelessly and negligently, without giving any signal or keeping his car under control, drove in an easterly direction for a few feet and then turned northerly and to the left across the pavement, thereby colliding with the Santoro car approaching from the right. It is averred that, as a result of the collision, Rosie Santoro, aged eleven years, died from injuries which she received, the other children were injured in such way as to require medical attention, and plaintiff's auto-truck was damaged, on account of which judgment against defendant was demanded in the sum of $10,000.

Defendant in his answer denies generally the allegations of negligence as charged in the complaint and alleges affirmatively in substance (a) that he signaled before starting his automobile down the platform on which it was standing before the collision; (b) that

plaintiff's son was driving the autotruck in a westerly direction on the north side of a paved highway at a high, dangerous and excessive rate of speed; that the day upon which the accident happened was clear and that the boy had an unobstructed view for a distance of 400 feet at the time defendant was crossing the highway, and saw defendant turning in a westerly direction in time to have avoided the collision, by turning to the right or left or by stopping the car; (c) that plaintiff's son did not attempt to reduce his speed or sound any horn or otherwise give any warning of his approach.

Defendant further avers that whatever damage, if any, plaintiff sustained was caused by the negligence and carelessness of Ruffie Santoro, as above stated.

On the issues thus briefly stated the cause was submitted to a jury and a verdict returned in favor of plaintiff for $1,925.  Defendant appeals.

AFFIRMED.  REHEARING DENIED.

For appellant there was a brief over the names of *Mr. J. Dean Butler* and *Mr. George N. Black, Jr.*, with an oral argument by *Mr. Isham N. Smith.*

For respondent there was a brief over the name of *Messrs. Hare, McAlear & Peters,* with an oral argument by *Mr. E. B. Tongue.*

BELT, J.—1, 2. Defendant's motions for a non-suit and directed verdict present the question as to whether plaintiff's son was guilty of contributory negligence.  These motions are in the nature of a demurrer to the evidence and, in determining whether the trial court was right in submitting the cause to the jury, we must look upon the evidence in the light most favorable to the plaintiff.  No attention will be

given to questions of fact upon which the testimony is conflicting. It is uncontradicted that the Santoro boy, at the time of the collision, was driving at the rate of twenty-five to thirty miles per hour; that he saw the defendant drive slowly down the approach to the platform in front of the warehouse when he was approximately 340 feet east thereof, and that he was only 150 feet from defendant when the latter reached the edge of the pavement gradually turning his car to the left with the apparent intention of driving westerly on the pavement. Counsel for appellant argues that, under these circumstances, it was the duty of the Santoro boy to slow down and to sound his horn, giving notice of his approach, and that his failure so to do contributed or helped to cause the collision about which complaint is made. It is urged by appellant that the accident occurred at a street intersection and that it was negligence *per se* for plaintiff's son to drive across same in excess of twelve miles per hour. The Santoro boy's version of the accident is disclosed by the following portion of the record:

"Q. Now, as he started down off the platform which way did he start out? A. East.

"Q. Now, you may tell just how he went after he started east. A. Well, he had to naturally start east to get off the platform; after he got off the plank part of the platform and got onto kind of a rock there, naturally turned toward the highway he had to gradually turn to a northerly direction, and, as he was getting on the highway his wheels were not straight with the highway, edge of the highway, they kind of cramped a little bit easterly it made it appear like he was going east.

"Q. Cramped easterly when his wheels got on the highway? A. Kind of in that position (illustrating); and when he constantly kind of swung to go straight across and he started across, * * , in fact, he was go-

ing all the time, but it seemed like to me he kind of slowed down. When his front wheels got onto the highway and he kind of went across, and when he started kind of sped up a little bit, seemed like to me. I was so close to him I didn't have no idea I could stop in time, so I swung to my right as far as I could, both hands on the steering wheel, which naturally I couldn't blow the horn, and it seemed like he kind of moved a little faster than before, and he struck me just behind the left front wheel some place on the fender. After that it tipped us over, I don't know what happened after that. * *

"Q. Now then, the defendant says you should have turned out back of him: Could you have turned out and gone toward the left of him? A. No, sir.

"Q. Why not? A. There wasn't sufficient room between the Brooks Ford and the Buick six from the right-hand side of the road facing east.

"Q. Now, they also say you should have gone on the right-hand side and gone over further— A. I swung over as far as I could in the short time that I had, and there was people there standing south of the door of the blacksmith shop; I was afraid if I go any further I would endanger their lives, and there was some babies there, and of course, everything happened so fast, I didn't know how close they were—I turned out as far as I could to the right-hand side, but it wasn't quite sufficient to be missed by the Brooks car."

There is testimony that the defendant failed to give any signal of his intention to turn to the left but the boy says that he saw him continually after he left the warehouse platform.

3. Ordinarily, contributory negligence is a question of fact for the jury. In the instant case we are not prepared to say, as a matter of law, that the Santoro boy could reasonably have anticipated that the defendant, after he reached the edge of the pavement, would continue to drive northerly and almost directly

across his course of travel. In the absence of notice
to the contrary, Santoro had the right to assume that
Brooks would not act other than as a man of ordi-
nary prudence and caution. The conduct of plain-
tiff's son is to be measured by the degree of care
which an ordinarily prudent person would have exer-
cised under all the facts and circumstances, as they
appeared to exist. Would such a person, in the light
of the evidence in this case, reasonably expect that
the defendant, leaving a private way, would drive
onto a main trunk highway and in front of oncoming
traffic immediately approaching from his right? The
jury, with commendable judgment, answered, "No,"
in which conclusion we concur.

4, 5. Neither can we hold, as a matter of law, that
the driver of the Santoro car was negligent in failing
to exercise due care to avoid the collision by turning
to the right or the left. From his testimony—and it
is corroborated by other witnesses—it appears that
an emergency existed. There was no time for debate
as to which was the better way to go. In the quie-
tude of the office, it is comparatively easy to demon-
strate by mathematical calculation, after an accident
has happened, that it could have been avoided had the
driver turned this or that way. The law, however,
is not concerned with such a test. In determining
whether Santoro was negligent we ask: Did he fail
to do that which an ordinarily prudent person would
have done under the same circumstances? Measured
by this standard of conduct, we see no reason to dis-
turb the finding of the jury as embodied in its verdict
that he was free from negligence. Of course, where
the statute controls, failure to do that which it com-
mands to be done, or the doing of that which is for-
bidden, constitutes negligence.

6. There is an issue as to whether the accident occurred upon a street intersection. Defendant contends that at such place, a street from the north intersects the highway. There was introduced in evidence a certified copy of dedication of such a street, being sixty feet in width, as shown by official plat and map of Reedville, filed of record August 18, 1879. At the time of the accident, however, this street was but little used and was a dump ground for a broken down automobile. It was also considered a good place to pile lumber and to keep sand and gravel. During one period in its history it was used as a cow pasture and had been farmed to some extent. A store building with a thirty-foot frontage once occupied a large part of the street, but was later removed. As one witness put it, "This so-called street was all grown up to grass." On the north side of the paved highway, at about eight feet from the edge thereof—where it is contended the street intersects it—there is a ditch on the east side of the street twenty-four feet long, three or four feet deep and six feet wide. On the west side of the street, several planks about sixteen feet in length had been used for the purpose of bridging this ditch. Chapter 371, Laws of Oregon of 1921, Section 1, subdivision 29, defines an intersection:

" * * the point or place where one highway or public way joins another at an angle, whether or not it crosses same."

In our opinion, this alleged street, under the conditions existing at the time of the accident, did not constitute a "highway or public way" as contemplated by the Oregon Motor Vehicle Law. The place of the accident was not upon a street intersection within the meaning of the statute and it was not negligence *per*

*se* for the Santoro boy so to drive in excess of twelve miles per hour.

7. Defendant predicates error upon the comment of the court at the commencement of the trial: "I don't think there is any question of contributory negligence in this case at all." It was error for the court so to state (*Wallace* v. *Portland Ry., L. & P. Co.*, 103 Or. 68 (204 Pac. 147), but such was cured by the instructions given relative to the defense of contributory negligence. The law on this phase of the case was fully and ably covered, and we assume that the jury abided thereby.

The judgment of the lower court is affirmed.

AFFIRMED. REHEARING DENIED.

BURNETT, C. J., and BEAN and BROWN, JJ., concur.